HANES v. COATES et al.

No. 30927. Jan. 25, 1944.

*145 P. 2d 394.*

Stephen A. George, John C. Caldwell, and Woodrow George, all of Ardmore, for plaintiff in error.

Dolman, Dyer & Dolman, of Ardmore, for defendants in error.

ARNOLD, J. This is an action for damages for breach of contract of purchase of wheat for future delivery. The court directed verdict and rendered judgment for plaintiffs, and defendant appeals. The parties are referred to herein as plaintiffs and defendants in the order of their appearance in the trial court.

The plaintiffs, doing business as Beer & Company, were brokers and one of the partnership's members was a member of various exchanges of the United States. They operated an office at Ardmore, Okla., and the defendant was a customer of that office. The defendant entered into a written customer's agreement with plaintiffs in which he employed them as brokers, subject to the constitution, rules, customs, and usages of the exchanges, where the transactions were effected, giving them full power and unrestricted discretion to buy and sell commodities for his account. The transactions involved in this action were dealings in wheat on the Chicago Board of Trade, in which defendant lost money on a fluctuating market.

The plaintiffs allege that they were compelled to make certain advancements on behalf of the defendant with which to pay losses, expenses and disbursements, and were entitled to recover such sums, together with certain commissions, in all amounting to $2,736.75; that the defendant had paid $1,498.75 of this amount, leaving a balance due and owing from defendant to plaintiffs in the sum of $1,238, for which amount judgment is prayed.

The defendant's first proposition is that the judgment is contrary to law

and the evidence for three reasons, reciting the three requisites of validity prescribed by section 562, Title 15, O. S. 1941; that contracts of sale for future delivery of cotton, grain, stocks or other commodities are valid and enforceable when (1) made in accordance with the rules of the board of trade or exchange where executed, and (2) actually executed on the floor of such board or exchange, and (3) placed with or through a regular member in good standing of such board of trade or exchange. He asserts that the evidence failed to establish that these requisites were complied with.

Under his second proposition, to wit:

"That the trial court committed reversible error in directing a verdict against plaintiffs for the full amount sued for, inasmuch as the amount which the defendants were entitled to recover, if anything, is, and was sharply in dispute, and was therefore a question for the jury,"

—he argues that the evidence shows that the managing agent of the partnership, and therefore the plaintiffs, as an inducement to procure the defendant as a trader, agreed to protect him from any loss in excess of 3c per bushel, and that the sale of his wheat purportedly made on the 15th day of May, 1940, was in fact made on the 16th day, at which time there had been a decided incline in the market; that this fact alone would make a question of fact for determination by the jury, as it would directly and materially affect the amount, if any, which the defendant owed.

The plaintiffs introduced in evidence their contract with the defendant, the rules and regulations of the Chicago Board of Trade, and the record of all the transactions to show the amount due and to show that all the requirements of the statute had been complied with, and that their contract was valid and enforceable. This evidence was conclusive that the sales were actually executed on the floor of the exchange.

The defendant advanced the argument that the Oklahoma statutes rela-

434

tive to contracts of sale for future delivery require that actual delivery be mutually contemplated by the parties when the purchase is made, and that when no delivery is contemplated by either party there can be no recovery upon such contracts. The defendant offered to show that he had no intention of requiring actual delivery of the wheat when he purchased it, and that such lack of intention to require delivery was evidenced by the fact that he had no granaries of his own in which to store the wheat, and for sake of argument was willing to admit that he was merely gambling on the wheat market. Such argument carries no weight where it is shown that the transactions were actually executed in the exchange as required by the statute. It appears that the breach of the contract by the defendant was his failure to keep up his margins with the plaintiffs as the market fell and the plaintiffs made advancements on his behalf to keep his account in good standing with the exchange. The defendant got behind in his account with the plaintiffs and they were compelled to sell his wheat and close out his account as they had the right to do under the rules and regulations of the exchange and under their contract with the defendant. The evidence failed to establish a valid defense in this respect.

Conceding defendant's statement that "peremptory instructions should only be given where all reasonable minds would draw the same conclusion, and it is error to direct a verdict where there is a controverted question of fact before the jury," we proceed to an examination of the record relative to questions of fact presented.

Though controverted, there is evidence on behalf of defendant that the manager of Beer & Company had an agreement with him to protect him against more than a 3c per bushel loss; by this agreement defendant admitted that the manager was to receive 10% of the profits resulting from defendant's trade transactions. There is no evidence that the partners or any of them had any knowledge of or received any benefits from such agreement. Defendant also testified that he "slipped" the manager "the cash on the side" in the transactions he had with him. It is apparent from all the evidence on this particular phase of the case that the defendant and the manager, if such a contract was entered into, did not intend that the partners know of their agreement. It appears conclusive to us that this arrangement, if it existed, was a personal one between the manager and defendant without any intention on their part that the partners be bound thereby. There was therefore no question of fact to present to the jury on this issue, since the manager is not a party to the suit.

Plaintiffs introduced documentary and oral testimony to the effect that the sales were made on May 15th. Among the documents introduced were copies of telegraphic orders of sale and confirmation of sales. The dates thereon were originally made by a stamping machine. On such exhibits, I, J, and K, the machine-made date thereon had been changed by pencil notation to show May 15th instead of May 16th as shown originally by the stamping machine. Without going into the contention of the plaintiffs that there is no competent evidence by the defendant showing an incline in the market on wheat on May 16th, we hold that the evidence as a whole shows conclusively that the sales were consummated on May 15th.

The brokerage contract being enforceable and there being no question of fact presented upon which reasonable minds might differ, the court did not err in directing a verdict for the amount sued for in view of the testimony of the plaintiffs in support of their claim, nor was it error to render judgment thereon.

Judgment affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, and HURST, JJ., concur. WELCH and DAVISON, JJ., absent.